UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MELISSA OSTRANDER, Plaintiff ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 04-30197-MAP |
| ) | |
| HUSSMANN CORPORATION, ) | |
| Defendant ) | |

MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT[1]

I.  *Concise Statement of Material Facts of Record*

   a.   The plaintiff was injured while working at the Pleasant Street Market in Westfield on April 28, 2002. She had just turned 18 on April 24, 2002, and had worked at the market for about a year.

   b.   The plaintiff was injured on a meat grinder which was allegedly manufactured by a predecessor corporation to the defendant, Hussmann. If so, then it was manufactured before 1950. See Hussmann's Answers to Interrogatories (Tab D), #10.

   c.   At the time of the plaintiff's accident, the meat grinder had no warnings on it. The feed hole on the grinder is 2-1/2 inches in diameter, which is narrowed to 2-3/8 inches when a stainless steel pan was placed on top of it. The feed throat is 4-1/2 inches long under which there is a spinning auger which cuts meat fed into it and pushes the meat through a die or extruding plate after it is cut by a rotating knife.

---

[1] The defendant specifically reserves its right to move for summary judgment on plaintiff's design defect claims following expert discovery. This motion concerns only the warning claims.

Hamburger is pushed out the discharge. An illustration to aid the court's understanding is attached hereto (Tab A).

    d.    Before the accident, the plaintiff knew there were moving parts down the feed hole which took a piece of meat and turned it into hamburger. She understood that down the feed hole there was something spinning which was dangerous, metal or sharp razors. Ostander deposition, at 142-143 (Tab B). She knew that an object dropped down the hole would get damaged. Id., at 143. She was aware there was a hazard presented if she got her hand started down the hole, and knew if she got her hand caught in the hole it would be dangerous. Id. She was aware of the risk of injury if her hand were to go down the hole. Id., at 145.

    e.    From her previous life experience the plaintiff knew to keep parts of her body away from the spinning parts of machines. For instance, she would want to keep her foot away from the spinning beater brush on a vacuum attachment, and not put her hands in the bowl of a commercial mixer when the beaters were turning. If she wanted to push material down on the side of the bowl, it was proper to shut it off, the push the material down, then turn it back on again. Id., at 13-14, 19-20.

    f.    The plaintiff's accident occurred when a customer ordered a pound of fresh hamburger. She went to the grinder and fed strips of meat through the machine once, and was feeding the meat through the feed hole with her left hand a second time: "I was tapping the meat, and I was watching it come through the other end, and was doing both looking back and forth and I just do that normally, I don't know what happened, why all of a sudden that just one time I got stuck, I don't quite

really [know]." Id. (Tab B), at 133; Plaintiff's Answers to Interrogatories (Tab C), #13 ("I turned the machine on and grabbed hamburger meat with the left hand and put it in the hole. The meat got stuck. Normally I put a whole handful in the opening. I pushed the meat into the hole to get it moving. The next thing I remember is my left hand being pulled into the machine"). She was pushing the meat down a little bit so it would go through the hole. Ostrander deposition (Tab B), at 132. She did not know where her hand was in the machine or what happened. Id., at 135.

    g.    She felt her hand pulled in. Id., at 134. At that time she was watching the discharge below and to her right. Id., at 133. When she looked up, she could see only her left wrist above the feed hole. Id., at 135-136.

    h.    She did not use the stomper to push meat in. It was available. She knew that the stomper was used "to push down the meat" when using the meat grinder. Id., at 45.

    i.    The accident traumatically amputated plaintiff's fingers and thumb on her left hand and she is left with a crescent shaped palm and no fingers. See Plaintiff's Answers to Interrogatories (Tab C), #7.

    j.    The plaintiff alleges the meat grinder was defective due to lack of appropriate warnings. She claims she should have been admonished "that the distance from the opening to the dangerous mechanism was very short and fingers could get caught and pulled into the grinder resulting in serious injury." See Plaintiff's Answers to Interrogatories (Tab C), #4(b).

II.   *Argument*

THE PLAINTIFF'S CLAIMS BASED IN NEGLIGENCE OR WARRANTY PREDICATED ON HUSSMANN'S FAILURE TO WARN SHOULD BE DISMISSED.

In *Vassallo v. Baxter Healthcare Corp.*, 428 Mass. 1 (1998), the SJC adopted §2(c) of the Restatement Third (Products Liability) formulation regarding failure to warn claims: "A product is . . . defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor, or a predecessor in the commercial chain of distribution, and an omission of the instructions renders the product not reasonably safe." Accordingly, "a product seller is not subject for liability for failure to warn or instruct regarding risks and risk-avoidance measures that should be obvious to, or generally known by, foreseeable product users. When a risk is obvious or generally known, the prospective addressee of a warning will or should already know of its existence." Restatement Third, comment j.

The First Circuit Court of Appeals has held as a matter of law that the dangers of putting one's hand down the throat of a running meat grinder were sufficiently patent and obvious that no additional warning was needed. *Plante v. Hobart Corp.*, 771 F.2d 617, 620-621 (1st Cir. 1985) (applying Maine law).[2] In *Plante*, the plaintiff put his hand into a meat grinding machine to clear a clog, rather than use the stomper, while it was still running. Speaking for the panel, Justice (then Judge) Breyer stated

---

[2] In all material respects Maine law is identical to Massachusetts law holding a manufacturer is not subject to liability for failing to warn of hazards which are open and obvious.

4

a meat grinder manufacturer had no liability as a matter of law for failing to warn of danger of putting ones hands into the grinder instead of the stomper. *Id.*, at 621. Further, the lack of warnings could not have "caused" the accident because the plaintiff *in fact* understood the relevant dangers. In that case the plaintiff testified he understood the dangers of sticking his hand into the feed of a running grinder. The court asked rhetorically: what would a warning tell the plaintiff that he did not already know that would make a difference? The court answered its own question, it would be superfluous and judgment was properly entered in favor of the grinder manufacturer. *Id.*, at 621.

The defendant Hussmann therefore moves for summary judgment on plaintiff's warnings claims, since the dangers of putting one's hand down the throat of a still-running meat grinder were subjectively known by the plaintiff, and in any event are objectively obvious and patent to a person of reasonable intelligence.

>   a.   *The plaintiff knew the hazard posed by sticking her hand down the feed throat, so a warning would have been superfluous.*

In her deposition the plaintiff was asked if she knew if her hand went down the feed throat there could be an injury to her hand, and she responded "*obviously . . . if you stuck your hand all the way down there for no apparent reason, yes . . .*" Ostrander deposition (Tab B), at 146 (emphasis added). She knew there were moving parts that ground meat into hamburger down the feed throat. *Id.*, at 148. She was aware there was a risk of injury if her hand were to go all the way down the hole. *Id.*, at 145.

5

Like the *Plante* case where its plaintiff reached his hand into the feed throat to clear a clog, here the plaintiff Ms. Ostrander was injured when the meat "got stuck" and she stuck her hand down the throat of the meat grinder and came into contact with the its worm. Neither of them used the stomper. The throat of the meat grinder was 4-1/2 inches long. In other words, the plaintiff could stick her fingers down the feed hole and down the throat 4-1/2 inches until her fingertip first made contact with the worm. In this accident the plaintiff's four fingers and her thumb were traumatically amputated, and she is left with a crescent shaped palm and no fingers.

The plaintiff was knowledgeable about the dangers of putting her hands into running machinery. She knew not to put her hands or a spoon into the bowl of a commercial mixer while its beaters were turning, and it had to be shut off before either of those things. Ostrander deposition (Tab B), at 13-14, 19-20. She understood when using machinery that there are moving pieces, and to keep parts of her body away from moving parts. Id., at 27. She knew that the stomper was used "to push down the meat" when using the meat grinder. Id., at 45. She understood the meat went down the feed hole and through an auger and then comes out as hamburger down below. Id., at 53.

A duty to warn is not imposed as a mindless ritual. A warning is not required unless 'the person on whom [the] duty rests has some reason to suppose a warning is needed.' The duty to warn extends to concealed, non-obvious dangers. *Killeen v. Harmon Grain Products, Inc.*, 11 Mass. App. Ct. 20, 24 (1980). Cf. *Colter v. Barber Greene Co.*, 403 Mass. 50, 59 (1988) (no duty to warn plaintiff of dangers of cleaning

6

gears without shutting it down, when guards had to be taken off machine to clean gears: because the employee knew the dangers involved in servicing the machine while it was running, a warning would not reduce the likelihood of injury). Accord, *Lussier v. Louisville Ladder Co.*, 938 F.2d 299, 301 (1st Cir. 1991) (no duty to warn about obvious hazards because such warnings would not reduce the likelihood of injury); *Laaperi v. Sears, Roebuck & Co.*, 787 F.2d 726, 732 (1st Cir. 1986) (no duty to warn about known hazards).

For instance, in *Bell v. Wysong & Miles Co.*, 26 Mass. App. Ct. 1011, 1013 (1988), an acknowledgment by a plaintiff that he knew he should not place any part of his body under the descending ram of a press brake machine and that it was obvious to him to do so would result in injury, this made a warning superfluous and judgment was appropriately entered for the manufacturer as a matter of law. Similarly, where a plaintiff stated common sense told him to keep his hands away from an in-running nip point and he knew if his hands were placed in the nips he would be badly injured, a slitter machine was not defective for a lack of warnings as a matter of law. *Brook v. Black Clawson Co.*, 2001 WL 128441*4; 2001 Mass. Super. LEXIS 158.

    b.   *The hazard of placing one's hand down the feed hole of a meat grinder was obvious and generally known.*

Even if a plaintiff denies subjective knowledge of the hazardous condition, judgment is properly enter as a matter of law if a person of reasonable intelligence would perceive the risk and need no additional warning. This was the rule set down

in *Costa v. Boston Red Sox Baseball Club*, 61 Mass. App. Ct. 299 (2004), where a fan struck by a foul ball professed ignorance of the danger of being struck by a foul ball while attending a major league baseball game. At the summary judgment stage the court had to accept the plaintiff's assertion as true, yet found as a matter of law the potential for a foul ball to injure a spectator was sufficiently obvious that a person of ordinary intelligence is held to have perceived the risk (even if she subjectively did not). There are other cases where it has been ruled as a matter of law a condition is open and obvious, requiring no warning. *Young v. Atlantic Richfield Co.*, 400 Mass. 837, 482 (1987); *Barnett v. Lynn,* 433 Mass. 662 (2001). More significantly, the First Circuit in *Plante,* discussed supra at pp. 4-5, held under analogous Maine law that the hazard posed by sticking one's hand down the throat of a meat grinder is obvious as a matter of law. *Plante,* 771 F.2d at 620-621.

Observations made by the SJC in *Bavuso v. Caterpillar Industrial, Inc.,* 408 Mass. 694, 701 (1990), are equally applicable here: "This is not a case of a hidden hazard, undetectable by the plaintiff, that a warning would have neutralized. The hazard . . . was open, obvious and unavoidably attendant upon the regular and usual one [of the machine]. The danger here was one that no one who thought about it . . . could fail to appreciate."

In this case, the plaintiff Ms. Ostrander states she "never imagined" poking at the meat with her fingers "would affect anything whatsoever" and she did not know exactly how far down the feed throat moving parts were located. That the plaintiff "never really thought" about the exact gravity of danger she recognized in putting

8

her hand down the hole is not controlling here. Like the *Bavuso* case, supra, "[t]he danger here is was one that no one who thought about it . . . could fail to appreciate."

The *Bavuso* case involved a young man who had worked for approximately two years operating a forklift whose overhead protection had been taken off to speed loading operations. The hazard that a load hoisted overhead could come down and injure him was obvious. Similarly, in the *Brook v. Black Clawson Co.* decision, noted at page 7 supra, in addition to finding the plaintiff's subjectively knew of the hazard of having his hands come in contact with nip points of a slitter machine, Judge Agnes found the dangers associated with the machine were fully obvious and generally appreciated, obviating any need for an additional warning or potential liability for failure to have one. *Id.*, 2001 WL 128441*4, 2001 Mass. Super. LEXIS 158.

Another instructive recent case is *Carey v. Lynn Ladder and Scaffolding Company*, 427 Mass. 1003 (1998), in which the SJC held as a matter of law no warning was needed to alert a plaintiff not to stand on the top platform of a stepladder. "A manufacturer has a duty to warn users of its product of the latent dangers of its normal and intended use." There is no jury issue whether the defendant should have placed a label on the ladder warning users they should not attempt to stand on the top step of the ladder. "The duty to warn does not attach where the danger is obvious . . . or where the plaintiff appreciated the danger substantially to the same extent as a warning would have provided." *Id.*, at 1004 (citations omitted).

9

The "open and obvious" rule of non-liability was reaffirmed in *O'Sullivan v. Shaw*, 431 Mass. 201 (2000), a swimming pool injury case where the plaintiff dove head first into the shallow end with subjective knowledge that he could be injured if his head hit the bottom of the pool. The SJC repeated the duty to protect lawful visitors against dangerous conditions "does not extend to dangers that would be obvious to persons of average intelligence." *Id.*, at 204. "[W]here a danger would be obvious to a person of ordinary perception and judgment, a landowner may reasonably assume that a visitor has knowledge of it, and therefore, 'any further warning would be an empty form' that would not reduce the likelihood of resulting harm." *Id.* The dangers of diving head first into a shallow pool are no more obvious than putting one's fingers down the feed throat of a meat grinder to push through "stuck" meat (when a stomper was designed for that purpose was available).

III. Conclusion

For all the foregoing reasons, the defendant Hussmann respectfully requests the court issue an interlocutory order of summary judgment in defendant's favor on the plaintiff's warnings-based claims.

HUSSMANN CORPORATION,
Defendant

By _____
JOHN B. STEWART
ROSS & ROSS, P.C.
121 State Street, Suite 201
Springfield, MA 01103
(413) 736-2725